FILED

AUG - 5 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

ROBERT L. MITCHELL,

        Plaintiff,

v.                              ACTION NO. 2:08cv632

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Robert Mitchell ("Mitchell"), brought this action under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed January 27, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be UPHELD and the case be DISMISSED.

### I. PROCEDURAL BACKGROUND

On March 8, 2006, Mitchell filed an application for DIB alleging an onset of disability as of May 24, 2001, due to neck

pain and limited motion, back pain, and leg weakness. (R.[1] 75-79, 85.) Mitchell's application was denied by the Social Security Administration initially on September 12, 2006 (R. 47-49.), and upon reconsideration on October 23, 2006.[2] (R. 50-53.) On November 1, 2006, Mitchell requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. 35.) On September 3, 2008, an administrative hearing was held in Norfolk, Virginia. (R. 239.) Mitchell was represented by counsel at the hearing. (R. 239.) An independent vocational expert, Robert Edwards, was present at the hearing and testified. (R. 256-262.) On September 16, 2008, the ALJ issued a written decision finding that Mitchell was not disabled under the Act because he had the residual functional capacity ("RFC") to make an adjustment to jobs that exist in significant numbers in the national economy. (R. 12-23.)

Following the ALJ's decision, Mitchell requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (R. 8.) On October 31, 2008, the Appeals Council denied Mitchell's request for review. (R. 4-7.) This makes the ALJ's decision the "final decision" of

---

[1]  "R." refers to the transcript of the administrative record of proceedings relating to this case.

[2]  This is plaintiff's fourth application for DIB. Plaintiff previously filed applications for DIB on July 25, 1996, August 23, 2001, and October 7, 2002. (R. 12.)

the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 416.1481.

Mitchell brought the instant action seeking judicial review of the Commissioner's decision denying his claims for DIB. Mitchell filed the instant complaint on December 30, 2008, which Defendant answered on March 13, 2009. Mitchell filed a motion for summary judgment with a memorandum in support on May 22, 2009. Defendant filed a motion for summary judgment in opposition to Mitchell's motion for summary judgment with a memorandum in support on June 22, 2009. The Court received no response from Mitchell to Defendant's motion for summary judgment. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II. **FACTUAL BACKGROUND**

Mitchell is a fifty (50) year old male, who was forty-two (42) at the time of his alleged onset of disability and forty-seven (47) on the day he was last insured.[3] (R. 75.) Mitchell has a high school education and past work experience as an auto detailer and

---

[3] To be entitled to DIB, a claimant's disability must have begun on or before the date he last met the insured status requirements of the Act. 42 U.S.C. § 423(a),(c); 20 C.F.R. § 404.101 (2008). In this case, plaintiff last met these requirements on December 31, 2006. (R. 54.) Thus, the relevant period of time at issue in this case is from May 24, 2001, plaintiff's alleged onset of disability, to December 31, 2006, his date last insured. (R. 54.)

3

a truck driver.   (R. 86, 90.)   Mitchell alleges an onset of disability as of May 24, 2001, due to neck pain and limited motion, back pain, and leg weakness.   (R. 85.)

The ALJ found that, at the time of the September 3, 2008 hearing, Mitchell suffered from a neck disorder, a back disorder, and a right knee disorder, all of which the ALJ found to be severe impairments.   (R. 15.)   The ALJ found that Mitchell's additional impairments were non-severe.   (R. 15.)   The ALJ, however, found that Mitchell's severe impairments did not meet or exceed one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.   (R. 15.)   The ALJ then found that Mitchell had the residual functional capacity ("RFC") to perform sedentary work and could work in unskilled occupations such as a gate guard and an office clerk.   (R. 23.)   The ALJ found that Mitchell could not return to his past work as an auto detailer and a truck driver because the work exceeded the demands of Mitchell's current RFC. (R. 22.)   However, the ALJ found that there are a significant number of jobs in the national economy that Mitchell could perform. (R. 23.)   Accordingly, the ALJ held that Mitchell was "not disabled" within the meaning of the Act.   (R. 23.)

## III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to

4

judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52). Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (quoting <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. <u>STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION</u>

The Commissioner ultimately held that Mitchell was not under a disability within the meaning of the Act.   Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).  This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam) (superceded in non-relevant part by 20 C.F.R. §§ 404.1517(d)(2), 416.927(d)(2)); <u>Hays v. Sullivan</u>, 907 F.2d 1453 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hunter</u>, 993 F.2d at 34 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).   It consists of more than a mere

6

scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before this Court, therefore, is not whether Mitchell is disabled, but whether the Commissioner's finding that Mitchell is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th

7

Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## V. **ANALYSIS**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[5] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

### A. **Sequential Disability Analysis**

The Commissioner follows a five-step sequential analysis to

---

[4]    A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[5]    "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 416.920. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2) Whether the claimant has a severe impairment. If not, the claimant is not disabled and the inquiry is halted.

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[6] and his vocational abilities. If so, the claimant is not

---

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). See 20 C.F.R. § 416.945(a)(1).

9

disabled.

## 1. Steps One Through Three

In this case, the ALJ decided at step five of the analysis that Mitchell was not disabled. At step one of the analysis, the ALJ determined that Mitchell did not engage in substantial gainful activity during the period from his alleged onset date of May 24, 2001 through his date last insured of December 31, 2006.[7] (R. 14.) At step two, the ALJ determined that Mitchell's neck disorder, back disorder, and right knee disorder are severe impairments. (R. 15.) At step three, the ALJ found that Mitchell did not have a severe impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. 15-16.)

## 2. RFC Determination

Prior to step four, the ALJ determined Mitchell's RFC upon consideration of the entire record. (R. 16.) Based on the objective medical evidence and Mitchell's testimony, the ALJ determined that Mitchell retained the RFC to perform sedentary work. (R. 16-22.) Specifically,

> The claimant is able to lift/carry 10 pounds occasionally and frequently. During the course of an 8 hour work day he was able to sit for 6 hours and stand/walk for 2 hours. The claimant has non-exertional limitations, in that he could no more than occasionally climb, balance, stoop, kneel, crouch, and crawl. He

---

[7] See supra note 3.

> could occasionally engage in tasks that required rotation and flexion of the head. The claimant was precluded from working at heights and in hazardous environments.

(R. 16.)

### a. Claimant's testimony

In reaching a conclusion about Mitchell's RFC, the ALJ gave consideration to Mitchell's testimony. The ALJ noted in his opinion that Mitchell's statements concerning his impairment and pain and the resulting impact on his ability to work are "not entirely credible." (R. 17.) The ALJ based this determination in part on Mitchell's testimony that he drives occasionally, regularly goes to physical therapy, socializes with friends and family, reads, and watches television. (R. 17.) The ALJ ultimately determined that Mitchell's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[8] (R. 17.)

### b. Physician's opinions

In reaching a conclusion about Mitchell's RFC, the ALJ also considered the records and opinions of various physicians and other medical sources. The ALJ considered the medical opinion of Dr. Richard M. Spear, one of Mitchell's treating physicians whose

---

[8] The ALJ noted that while Mitchell's condition may have deteriorated since December 31, 2006 and may be disabling at this time, such a finding is immaterial if Mitchell is not found to be disabled as of December 31, 2006. (R. 17); See supra note 3.

11

records date from January 2005 to January 2007, (R. 18), indicating that Mitchell was doing fairly well and experienced only "waxing and waning symptoms". (R. 18-19, 204.) Thereafter, the ALJ noted that Mitchell saw Dr. Richard Craven for a consultative examination on May 16, 2006. (R. 185-189.) Dr. Craven indicated that Mitchell's motor examination was normal, that Mitchell displayed no spasticity or tremor and that he appeared to have normal muscle bulk (R. 187-188.) Dr. Craven also observed that Mitchell displayed normal hand dexterity, that he could tie his shoes, fasten buttons, tear paper, and grasp a pen. (R. 188.) Dr. Craven noted that Mitchell used a cane appropriately and could effectively use at least one extremity for carrying while using the cane. (R. 188.) The ALJ noted that Dr. Craven opined that Mitchell would be limited to sitting for 4 hours out of an 8-hour day, and to standing and walking 2 hours, due to development of pain and stiffness in his right knee and lower back. (R. 189.) Dr. Craven stated that Mitchell would be unable to do any bending in an 8 hour day but that he could lift 5 pounds frequently and 15 pounds occasionally. (R. 189.) Additionally, Dr. Craven opined that Mitchell had no limitations regarding speech or hearing and could perform a limited amount of driving. (R. 189.) The ALJ accorded Dr. Craven's opinion moderate weight. (R. 21.)

The ALJ also considered the medical opinion of the State Agency's medical consultant, Dr. Neil Novin. (R. 21.) Dr. Novin

considered the medical evidence, including Dr. Craven's findings, and opined that Mitchell could lift and carry 20 pounds occasionally and 10 pounds frequently; that he could stand and walk at least 2 hours in an 8-hour workday with use of a hand-held device for ambulation; that he could sit for about 6 hours in an 8-hour workday; and that he had limited ability to push and pull with his lower extremities, but could only occasionally climb stairs, stoop, kneel, crouch, and crawl. (R. 21, 193-197.) The ALJ also accorded this opinion moderate weight. (R. 21.)

### 3. **Step Four**

The ALJ found in step four that Mitchell did not retain the RFC to perform the functional demands of his previous occupations, which included work as an auto detailer and a truck driver. (R. 22.)

### 4. **Step Five**

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of severe impairment, and lacks the RFC to return to his former employment, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national or local economy that the claimant could perform consistent with her RFC, age,

education, and past work experience.   Hunter, 993 F.2d at 35;
Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

In the instant case, the ALJ found that Mitchell was forty-two
(42) years old on the date last insured, which classifies Mitchell
as a "younger individual" between 18-44 within the meaning of 20
C.F.R. 404.1563.   (R. 22.)   The ALJ found that transferability of
job skills is not material to the determination of disability in
this case, because the Medical-Vocational Rules support a finding
that Mitchell is not disabled, regardless of transferability of job
skills.   (R. 22.)   Therefore, the ALJ concluded that Mitchell's
medical condition did not prevent him from finding and performing
sedentary work.   (R. 22-23.)   The ALJ took into consideration
Mitchell's RFC, age, education, and work experience along with the
Medical-Vocational Guidelines of Appendix 2 of the regulations, 20
C.F.R. Subpart P, Regulations No. 4.   (R. 22.)   The ALJ also took
testimony from an independent vocational expert who stated that
there were a significant number of unskilled, sedentary jobs
existing in the national and local economies which Mitchell could
perform.   (R. 22-23.)

### B. Mitchell's Claims

Mitchell alleges that the ALJ's decision is not supported by
substantial evidence because the ALJ: (1) did not give proper
weight to the medical opinion of Dr. Craven; (2) failed to give
proper weight to Dr. Craven's stooping restriction; (3) improperly

asked questions of the vocational expert which did not accurately reflect all of Mr. Mitchell's limitations; and (4) improperly rejected Mitchell's own testimony.  Pl.'s Mem. at 5.

### 1. **Medical Opinion of Dr. Craven**

Mitchell claims that the ALJ erred by not affording the opinion of the consultative examiner, Dr. Craven, greater weight. The plaintiff notes that Dr. Craven is the only physician in this case to have both examined Mr. Mitchell and rendered a medical source statement. Pl.'s Mem. at 4.

### a. **Evaluation of Medical Opinion Evidence**

The ALJ is required to evaluate every medical opinion in the record, regardless of the source of the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Because state agency medical and psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," the ALJ must consider their findings as opinion evidence.  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also Soc. Sec. Ruling 96-6p. However, it is a well-settled principle that it is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. § 404.1527(c)(4).

In determining the appropriate weight to which a non-treating source's medical opinion is entitled, the ALJ must consider the following factors: (1) whether the medical source actually examined

15

the claimant; (2) the degree to which the medical opinion is supported by relevant evidence; (3) the degree to which the medical opinion is consistent with the record as a whole; and (4) the medical source's specialization.   20 C.F.R. §§ 404.1527(d)(1) & (3)-(5), 416.927(d)(1) & (3)-(5).   In addition, the ALJ must consider any other factors that tend to support or contradict the medical opinion, but only if brought to his attention.  <u>See</u> 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

Generally, more weight will be given to the medical opinion of an examining source than to the medical opinion of a non-examining source.   20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).   In appropriate circumstances, however, the opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may be entitled to more weight than the opinion of an examining source, or even the opinion of a treating source.  Soc. Sec. Ruling 96-6p.

> For example, the opinion of a State agency medical or psychological consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

Soc. Sec. Ruling 96-6p.

The ALJ considered Dr. Craven's medical opinion and

16

specifically accorded it moderate weight. (R. 21.) The ALJ noted that Dr. Craven opined that Mitchell would be limited to sitting for 4 hours out of an 8-hour day, and standing and walking 2 hours, due to development of pain and stiffness in his right knee and lower back. (R. 189.)  Dr. Craven stated that Mitchell would be unable to do any bending in an 8 hour day but that he could lift 5 pounds frequently and 15 pounds occasionally. (R. 189.) Additionally, Dr. Craven opined that Mitchell had no limitations regarding speech or hearing and could perform a limited amount of driving. (R. 189.) The ALJ found that Dr. Craven's suggested restrictions regarding sitting, walking, and frequent lifting were not consistent with the evidence of record. (R. 21.) The ALJ found that the evidence reflected Mr. Mitchell had mild neurological deficits, at best, and had received only conservative medical treatment since July 2001. (R. 21.) Additionally, the restrictions Dr. Craven suggested were not consistent with Mr. Mitchell's own testimony regarding his functional abilities. (R. 21.) Specifically, the ALJ noted:

> [Mr. Mitchell] testified to being able to lift/carry 10 pounds, sit 30 minutes, stand 45 minutes, and walk one-half block. The claimant reported that he was essentially autonomous in caring for his personal needs, but required partial assistance with dressing and shaving. Those activities are inconsistent with totally debilitating limitations.

(R. 21.)

The ALJ considered the fact that Dr. Craven actually examined

Mr. Mitchell as well as his opinion evidence. (R. 19, 21.) Only after considering the degree to which Dr. Craven's medical opinion was supported by the relevant evidence and the degree to which it was consistent with the record as a whole did the ALJ note the weight he would accord the opinion. (R. 21.) Thus, the Court finds that the ALJ weighed the evidence in a manner that complies with the regulations and his findings are entitled to deference.   20 C.F.R. §§ 404.1527(d)(1) & (3)-(5), 416.927(d)(1) & (3)-(5). Therefore, the Court rejects plaintiff's claims that the ALJ erred in weighing the opinion of Dr. Craven.

## 2. Dr. Craven's Stooping Restriction

The Plaintiff argues that the ALJ failed to give proper weight to Dr. Craven's stooping restriction. Pl.'s Mem. at 5.  Dr. Craven noted in his medical opinion that Mr. Mitchell had "zero" ability to bend or stoop due to his back pain. (R. 189.) The Plaintiff argues that the ALJ neglected to specifically address this stooping restriction in his discussion.  Pl.'s Mem. at 5.  The stooping restriction is important because the ALJ ultimately limited Mr. Mitchell to sedentary work. Id.  Plaintiff argues that the sedentary occupational base would be significantly eroded if an individual is unable to stoop and could potentially lead to a finding of disability.[9] Id.

_____

[9]    Defendant argues that whether the ALJ specifically addressed the stooping restriction is irrelevant in this case as the jobs the ALJ identified that plaintiff could perform do not

This Court disagrees with Mitchell's contentions and finds that the ALJ properly considered the opinion of Dr. Craven and his stooping restrictions. Specifically, the ALJ noted that he accorded Dr. Craven's opinion only moderate weight because it was inconsistent with the evidence on record as well as Mr. Mitchell's own testimony regarding his activities. (R. 21.) The ALJ went on to note that none of the treating or examining physicians opined that the claimant was totally disabled. (R. 21.) Additionally, Dr. Neil Novin, an additional consultant for the State Agency opined that Mr. Mitchell can "frequently balance, but can no more than occasionally stoop ,kneel, crouch, and crawl." (R. 21.) (emphasis added). Finally, the ALJ ultimately found that "[t]he claimant has non-extertional limitations, in that he could not more than occasionally climb, balance, stoop, kneel, crouch, and crawl." (R. 16.) Thus, this Court concludes that the ALJ properly considered Dr. Craven's medical opinion regarding Mr. Mitchell's stooping restrictions.

### 3. Vocational Expert Testimony

Mitchell argues that the ALJ improperly asked questions of the vocational expert which did not accurately reflect all of Mr. Mitchell's limitations. Pl.'s Mem. at 6. Mitchell argues that the ALJ's hypothetical questions to the vocational expert did not

---

involve any stooping. See Gate Guard, DICOT 372.667-030, 1991 WL 673099; Office Clerk, DICOT 209.562.010, 1991 WL 671792.

consider Dr. Craven's restriction of "zero" stooping. Pl.'s Mem. at 6.

Mitchell 's arguments are without merit, because the ALJ had sufficient grounds for determining Mitchell's impairments and the resulting effect on his ability to work, including his determination of the appropriate weight to give to Dr. Craven's medical opinion, as discussed <u>supra</u>. In doing so, the ALJ posed a series of hypothetical questions to the vocational expert that were consistent with the ALJ's findings of Mitchell's limitations. The hypothetical individual is described by the ALJ as follows:

> "Assume a person of the same age, education and work background as Mr. Mitchell. I'd like you to assume that that individual could perform light work as provided there was as - - standing and walking was limited to no more than two hours in an eight-hour day. There would be no more than occasional postural activities. There would be limited cervical rotation and flexion of the head and no exposure to heights and hazards." (R. 256-257.)

The ALJ later posed a second hypothetical which added a sedentary work limitation to the first hypothetical. (R. 257.) The vocational expert responded that such an individual could perform the job of gate guard or an office clerk, and that such jobs existed in significant numbers in the national and local economies. (R. 257-258.) Examination of the vocational expert by Mitchell's counsel revealed that a job would not exist for an individual who has the age, education, and work history of the claimant but whose pain causes him to be unable to maintain regular attendance. (R. 259.) Additionally, the vocational expert testified that all

20

potential jobs would be eliminated if a condition that the claimant must often elevate his legs or frequently take unscheduled breaks were added to the original hypothetical. (R. 260.)

The Court disagrees with plaintiff and finds that the ALJ's hypothetical questions to the vocational expert accurately reflected all of Mr. Mitchell's limitations. The ALJ's hypothetical questions did pose a restriction of occasional postural activities. (R. 257-258.) The plaintiff concedes that the regulatory definition of "postural activities" includes stooping. Pl's Mem. at 6.[10] The Court has already held that the weight accorded by the ALJ to Dr. Craven's stooping restriction was appropriate. The Defendant again notes that the gate guard and office clerk positions do not, by definition, require any stooping.[11]

Based on the foregoing, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's consideration of the vocational expert's testimony, and that the ALJ's decision to do so was reached based upon a correct application of the relevant law.

---

[10] Additionally, the Court notes that plaintiff's attorney was afforded an opportunity to question the vocational expert regarding the effect of an inability to stoop on the gate guard and office clerk positions and failed to do so. (R. 256-262.)

[11] See supra note 9.

## 4. **Credibility of Plaintiff's Testimony**

Plaintiff claims that the ALJ improperly rejected the testimony of Mitchell himself. Pl.'s Mem. at 6. Specifically, Plaintiff argues that Mr. Mitchell's testimony regarding his pain and daily life activities are consistent with the severity of his medical conditions and are supported by the findings of Dr. Craven. Id. at 7. Thus, Plaintiff argues that further consideration should have been given to Mr. Mitchell's credibility. Id.

Credibility determinations are reserved to the ALJ. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or on the Secretary's designate, the ALJ).'") (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Court's analysis is therefore restricted to determining if the ALJ's decision is supported by substantial evidence and whether the ALJ employed the correct legal standard. See Craig, 76 F.3d at 589.

In evaluating a claimant's statements regarding pain or other symptoms in disability determinations, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence showing the existence of a medical impairment or

22

impairments which could reasonably be expected to produce the pain or other symptoms alleged; and (2) if there is such evidence, evaluate the intensity and persistence of the claimant's symptoms, including pain, and the extent to which they affect his ability to work.  Soc. Sec. Ruling 96-7p.   In conducting the second step of the analysis, using all available evidence, the ALJ is required to make a credibility determination as to the claimant's statements regarding the intensity, persistence, or functionally limiting effects of his symptoms whenever the claimant's statements "are not substantiated by the objective medical evidence" and suggest a greater degree of impairment than can be supported by the objective medical evidence alone.  Soc. Sec. Ruling 96-7p; see also 20 C.F.R. § 404.1529(c)(4).   Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it.  Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

> It is not sufficient to make a conclusory statement that "the [claimant]'s allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the [ALJ] simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight that the [ALJ] gave to the [claimant]'s statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p.

In the instant case, the ALJ appropriately supported his

23

negative credibility determination. In finding that Mitchell's testimony was not fully credible, the ALJ clearly specified the reasons for his decision and discussed the evidence supporting the decision. (R. 17-23.) The ALJ found plaintiff's testimony not credible because his claim that he was disabled was inconsistent with the residual functional capacity assessments of the record, the progress notes, his activities of daily living, and his social functioning. (R. 17.) The ALJ noted that Mitchell's testimony that he drives occasionally, regularly goes to physical therapy, socializes with friends and family, reads, and watches television was inconsistent with his claim that he was totally disabled. (R. 17.) The ALJ also noted that plaintiff testified that he had attended physical therapy three times a week since 2004. However, there is no medical evidence on the record of Mr. Mitchell's attendance and Dr. Spear, Mr. Mitchell's treating physician, testified plaintiff was only involved in a <u>home</u> exercise program. (R. 20.) Additionally, Mr. Mitchell testified he was instructed to elevate his legs throughout the day, however, the ALJ could find no evidence that any physician instructed him to do so. (R. 20.) Last, the ALJ noted that following Mr. Mitchell's hospitalization in July 2001 all of his treatment modalities have been conservative in nature.[12] (R. 21.), <u>See</u> <u>Mickles v. Shalala</u>, 29 F.3d 918, 930 (4th

---

[12] Specifically, the Defendant notes that plaintiff had at least three (3) significant gaps in treatment; one for forty-one (41) months and two (2) for five (5) months. (R. 129-30, 204-24,

Cir. 1994)(stating that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). Thus, the ALJ repeatedly found plaintiff's credibility flawed by the significant inconsistencies between Mr. Mitchell's testimony and the medical evidence. (R. 20.) Specifically, the ALJ stated:

> There are no objective findings or clinical findings to support Mr. Mitchell's allegations of disabling limitations. I find the claimant credible to the extent that he would experience back, neck and right knee pain with heavy lifting, engaging in more than occasional postural activities, as well as working at heights and in environmental hazards. (R. 21.)

On this basis, the Court finds there was substantial evidence for the ALJ to have concluded Mitchell's testimony was not credible.

As the finder of fact, the ALJ is able to make determinations regarding the credibility of witnesses. The Court notes that the ALJ inquired as to Mitchell's claimed disabilities and current daily activities, and was able to compare his testimony with all of the medical evidence in the record. "[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of [Plaintiff], the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Furthermore, the ALJ may reject a plaintiff's testimony if it conflicts with the medical evidence.

---

231.)

<u>Mitchell v. Bowen</u>, 827 F.2d 387, 389 (8th Cir. 1987); <u>see also</u> <u>Lee v. Sullivan</u>, 945 F.2d 687, 693 (4th Cir. 1991).

Accordingly, the Court FINDS that the ALJ employed the correct legal standard in evaluating the credibility of Mitchell's testimony and subjective complaints of pain, and his credibility determination is supported by substantial evidence and was based on a correct application of law.

## C. **Conclusion**

The Court FINDS that the ALJ's decision was based upon substantial evidence. In particular, the ALJ throughly reviewed the entire record, gave proper weight to the medical opinion of Dr. Craven and Dr. Craven's stooping restriction, properly asked questions of the vocational expert which accurately reflected all of Mr. Mitchell's limitations, and properly assessed the credibility of Mr. Mitchell's testimony.

## VI . **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that defendant's motion for summary judgement be GRANTED, and that plaintiff's motion for summary judgement be DENIED. Accordingly, the Court recommends that the case be DISMISSED.

## VII . **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

26

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


United States Magistrate Judge

Norfolk, Virginia
August  5  , 2009

27

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Joseph Michael Young
Rutter Mills LLP
160 W. Brambleton Ave.
Norfolk, VA 23510
COUNSEL FOR PLAINTIFF

Matthew Harley Kraft
Rutter Mills LLP
160 W. Brambleton Ave.
Norfolk, VA 23510
COUNSEL FOR PLAINTIFF

Kent Pendleton Porter
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510
COUNSEL FOR DEFENDANT

Fernando Galindo, Clerk

By: _L. Wordock_

Deputy Clerk

August 5 , 2009

28